**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLY B. DONAHUE,<br><br>Plaintiff,<br>v.<br><br>WELLPATH CORP., *et al.*,<br><br>Defendants. | No. 4:24-CV-00513<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 7, 2026**

Plaintiff Kelly B. Donahue filed the instant *pro se* civil rights lawsuit alleging constitutional violations by prison officials and medical providers at SCI Frackville. His Section 1983[1] claims sound in deliberate indifference to serious medical needs. Donahue has filed a third amended complaint in this matter, which several defendants now move to dismiss. The Court will dismiss in part Donahue's third amended complaint.

## I. BACKGROUND

In March 2024, Donahue filed the instant Section 1983 civil rights lawsuit in this Court.[2] He alleged that prison officials were deliberately indifferent to his serious medical needs.

---

1 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

2 *See generally* Doc. 1.

Donahue, however, has had significant difficulties with his *pro se* pleadings. His initial complaint was dismissed because he had failed to allege personal involvement or deliberate indifference by any named Defendant.[3] Donahue filed an amended complaint,[4] which suffered from many of the same pleading problems as his original complaint. That is, Donahue once again failed to plausibly allege personal involvement or deliberate indifference for most of the named Defendants.[5] The Court gave Donahue the option of proceeding with the single claim he had plausibly stated against Wellpath, LLC, or filing a final, second amended complaint.[6] The Court also gave Donahue specific instructions if he chose to amend his pleadings, including abiding by Federal Rule of Civil Procedure 8.[7]

Donahue opted to file a second amended complaint but did not heed this Court's instructions. His second amended complaint spanned 70 pages in length and contained *628 paragraphs*, appearing to provide a day-by-day (and sometimes hour-by-hour) breakdown of his medical issues and treatment for a two-and-a-half year time period.[8] Donahue's pleading was anything but a "short and plain statement" of his claims for relief.

---

3 *See* Doc. 11 at 4-8.
4 Doc. 13.
5 *See* Doc. 29 at 5-8.
6 *See id.* at 16-17.
7 *See id.*
8 *See generally* Doc. 31.

Donahue, moreover, disregarded this Court's explicit pleading directions in multiple ways, including by providing numerous citations and quotations from case law[9] when he was specifically admonished that he "may not include legal standards, legal argument, or citations to legal authority unless absolutely necessary to plead a claim[.]"[10] Donahue also sued defendants who were involved only with the post-incident grievance process, even though he was explicitly warned against doing so.[11] Additionally, Donahue attempted to include claims against different Defendants that were unrelated to his Eighth Amendment medical care claims,[12] thus violating Federal Rule of Civil Procedure 20(a)(2).

The Court therefore summarily dismissed Donahue's improper second amended complaint and gave him one final opportunity to appropriately amend his pleadings.[13] He timely filed a third amended complaint,[14] the operative pleading in this action. Donahue sued the following defendants: Wellpath, LLC (Wellpath), Nicole Boguslaw, Megan Delpais, Donald O'Brien, William Knappenberger, Kacie Harris, Crystal Ewaskiwicz, Cynthia Gronski, Kathy Brittain, Beth Herb, and Beth Lazusky.[15]

---

9 *See, e.g.*, *id.* ¶¶ 5-11, 93-97, 105, 123, 126, 133, 139, 154-56, 159, 214.
10 Doc. 29 at 17.
11 *See id.* at 16.
12 *See, e.g.*, Doc. 31 ¶¶ 298-316 (discussing COVID-19 virus issues).
13 *See* Doc. 35 at 4-5.
14 Doc. 36.
15 *See id.* at p. 2.

In the fourth iteration of his pleading, Donahue again asserts that Defendants were deliberately indifferent to his serious medical needs. He alleges that he suffered from hemorrhoids, diarrhea, pain, and internal bleeding, and eventually had to undergo a hemorrhoidectomy at an outside hospital in September 2022.[16] Following this surgery, Donahue avers that he developed an infection at the surgery site, which in turn caused the formation of a fistula, requiring additional hospitalizations in November 2022 and March 2023.[17] Ultimately, Donahue had to undergo a second surgery—a fistulotomy—in November 2023.[18]

Shortly after Donahue lodged his third amended complaint, Wellpath filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.[19] Donahue's case was then stayed pursuant to the automatic stay entered in that bankruptcy proceeding[20] and administratively closed.[21] In July 2025, following the bankruptcy court's lifting of the automatic stay, Donahue's case was reopened.[22]

In August 2025, the Court required Donahue to show cause as to why his pre-petition claims against Wellpath and its employees should not be dismissed

---

16 *See id.* ¶¶ 11, 12, 25, 43.

17 *Id.* ¶¶ 45-50.

18 *Id.* ¶¶ 49-52.

19 *See generally In re: Wellpath Holdings, Inc.*, No. 4:24-bk-90533 (Bankr. S.D. Tex.); *see* Doc. 41.

20 *See In re: Wellpath Holdings, Inc.*, No. 4:24-bk-90533, Doc. 1480 ¶¶ 1-3 (Bankr. S.D. Tex. Feb. 19, 2025); 11 U.S.C. § 362(a).

21 *See* Doc. 46.

22 *See* Doc. 48.

for, respectively, failing to submit a claim in the bankruptcy proceedings and for failing to opt out of the bankruptcy Plan's Third-Party Release.[23] On January 22, 2026, after briefing, the Court dismissed defendants Wellpath, Boguslaw, Delpais, O'Brien, and Harris because Donahue had not taken any action to protect his rights in bankruptcy court (before or after receiving notice of the Third-Party Release provision).[24]

Shortly before the Court issued its January 22 dismissal Order, and unbeknownst to the Court, Donahue submitted a late request to the bankruptcy court to opt out of the Third-Party Release, which request the bankruptcy court deemed timely filed and granted on January 21, 2026.[25] Donahue provided this updated information to the Court on February 17, 2026, and simultaneously moved for reconsideration of the Court's January 22 dismissal Order.[26] In light of those new developments, the Court vacated the portion of its January 22 dismissal Order with respect to Boguslaw, Delpais, O'Brien, and Harris, but not as to Wellpath.[27]

Defendants Boguslaw, Delpais, O'Brien, and Harris now renew their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[28] That motion is fully

23 *See* Doc. 58.
24 *See generally* Doc. 70.
25 *See* Doc. 72-1.
26 *See* Doc. 72.
27 *See* Doc. 74.
28 Doc. 75. The other remaining Defendants (Knappenberger, Brittain, Herb, Lazusky, Ewaskiwicz, and Gronski) have not yet been served in this case due to the extensive delays caused by Donahue's deficient pleading and Wellpath's bankruptcy.

briefed and ripe for disposition. The Court will simultaneously screen Donahue's third amended complaint pursuant to 28 U.S.C. § 1915A(a), as required.

## II. STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[29] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[30] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[31]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[32] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[33] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint,

---

29 *See* 28 U.S.C. § 1915A(a).
30 *Id.* § 1915A(b)(1).
31 *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
32 *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
33 *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[34]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[35] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[36] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[37] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[38] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[39]

Because Donahue proceeds *pro se*, his pleadings are to be liberally construed and his third amended complaint, "however inartfully pleaded, must be

---

34 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

35 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

36 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

37 *Id.* (quoting *Iqbal*, 556 U.S. at 679).

38 *Id.* (quoting *Iqbal*, 556 U.S. at 679).

39 *Iqbal*, 556 U.S. at 681.

held to less stringent standards than formal pleadings drafted by lawyers[.]"[40] This is particularly true when the *pro se* litigant, like Donahue, is incarcerated.[41]

## III. DISCUSSION

As noted above, Boguslaw, Delpais, O'Brien, and Harris move to dismiss Donahue's third amended complaint, asserting that Donahue fails to state an Eighth Amendment medical indifference claim against them. Donahue opposes the motion but only discusses the Eighth Amendment claims against Wellpath (which entity has already been dismissed from this case), Boguslaw, and Harris.[42] The Court will also independently assess the sufficiency of the allegations against the other six Defendants who have not yet been served. Donahue divides his third amended complaint into allegations pertaining to each Defendant, so the Court will examine the sufficiency of the claims in the same manner.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[43] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that

---

40 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
41 *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
42 *See* Doc. 78 at 1-5.
43 *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

need; and (3) the deliberate indifference caused harm to the plaintiff."[44] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[45]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[46] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[47] Claims sounding in mere medical negligence will not suffice.[48]

### A. Megan Delpais and Beth Lazusky

According to Donahue, Megan Delpais was the Acting Corrections Health Care Administrator,[49] and Beth Lazusky was the Grievance Coordinator.[50] His allegations against Delpais and Lazusky are minimal and involve only the

---

44 *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

45 *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

46 *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

47 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

48 *Rouse*, 182 F.3d at 197.

49 Doc. 36 ¶ 22.

50 *Id.* at p. 35.

grievance process.[51] Such allegations do not plausibly state personal involvement in a constitutional violation and thus fail to state a claim for relief.

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[52] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[53] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[54] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[55]

According to Donahue, the only involvement Deplais and Lazusky had in his medical care was review and denial of his prison grievances.[56] But, as noted

---

51 *See id.* ¶¶ 20-30 (Delpais); *id.* ¶¶ 233-36 (Lazusky).

52 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

53 *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

54 *Id.* (quoting *Rode*, 845 F.2d at 1207).

55 *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

56 Although Donahue claims that Delpais "denied [him] prescribed medical treatment," his own allegations reflect that Delpais simply denied his grievance complaining about another medical provider's conduct. *See* Doc. 36 ¶¶ 28-31.

above, a state official's involvement in the post-incident grievance process by itself does not plausibly state personal involvement in a constitutional violation. To plausibly state a Section 1983 claim, Donahue must specify each Defendant's personal involvement in the alleged constitutional violation, *i.e.*, the allegedly deficient medical care. He has not done so for Delpais and Lazusky. He also has not challenged Defendants' motion to dismiss as to Delpais, thus rendering that motion unopposed. Accordingly, the Court must dismiss the Section 1983 claims against Delpais and Lazusky under Rule 12(b)(6) and 28 U.S.C. § 1915A(b)(1), respectively, for lack of personal involvement.

### B. Cynthia Gronski

Donahue discusses one incident with respect to Nurse Cynthia Gronski. He recounts that when he returned to SCI Frackville from Dauphin County Prison, Gronski performed his initial medical screening prior to his readmission to SCI Frackville.[57] Donahue alleges that he informed her of his symptoms (diarrhea, internal bleeding, dehydration, and rectal pain), and she "dismissed [his] complaints," attributing them to prison food or a "bug" and telling him that if they do not clear up, to sign up for sick call.[58] Donahue contends that Gronski failed to examine him or properly diagnose him.[59]

---

57 Doc. 36 ¶¶ 95-96.
58 *Id.* ¶ 98.
59 *Id.* ¶¶ 99-100.

These allegations regarding intake treatment on a single day do not establish the high bar of deliberate indifference to serious medical needs. Donahue admits that Gronski considered his complaints, offered a potential cause of his symptoms, and encouraged him to follow up with the medical department. At most, Donahue's claims regarding failure to properly examine and diagnose sound in medical negligence, which does not implicate a constitutional violation. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."[60] The Eighth Amendment claim against Gronski will be dismissed for failure to state a claim under Section 1915A(b)(1).

### C. William Knappenberger

Donahue's Eighth Amendment allegations against Nurse William Knappenberger also fall short. Donahue alleges that Knappenberger (1) incorrectly told him to submit a sick-call request rather than a request to staff (DC-135A form), causing a delay in treatment[61]; (2) improperly tried to get Donahue to sign an SCI Frackville-specific "Prep Form" prior to Donahue's colonoscopy and hemorrhoidectomy[62]; (3) failed to change Donahue's dressing following his

---

60 *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Estelle*, 429 U.S. at 106).

61 Doc. 36 ¶¶ 36-38.

62 *Id.* ¶¶ 39-43.

hemorrhoidectomy, after which Donahue developed an infection[63]; and (4) failed to change Donahue's wound dressing following his fistulotomy and instead only gave him gauze pads.[64]

These allegations do not reflect deliberate indifference to serious medical needs. Donahue's initial two allegations regarding prison paperwork do not even implicate medical negligence, much less deliberate indifference. His third and fourth allegations again—at most—sound in medical malpractice. To wit: Donahue himself alleges that Knappenberger "owed a duty of care" and "breached" that duty by failing to provide appropriate post-surgical wound care, resulting in an infection and fistula.[65] That is a quintessential medical malpractice claim, not a constitutional violation. Therefore, the Eighth Amendment claim against Knappenberger will be dismissed under Section 1915A(b)(1) as well.

### D. Kacie Harris

Donahue alleges that H.S.A. Kacie Harris "is at fault" for not scheduling his medical consultations "in a timely manner."[66] He claims that he should have been seen two weeks after his hemorrhoidectomy but that it took two months for the

---

63 *Id.* ¶¶ 45-48.

64 *Id.* ¶¶ 52-54. Donahue also alleges that Knappenberger "lie[d]" in the medical records about Donahue failing to appear for dressing changes. *Id.* ¶ 55. This allegation does not state a claim for deliberate indifference to serious medical needs, either. *See Montanez v. Price*, 154 F.4th 127, 142 (3d Cir. 2025) (explaining that plaintiff's claim that a physician assistant denied him stronger pain medication and "lied to him" about being referred to physical therapy did not state an Eighth Amendment medical indifference claim).

65 *Id.* ¶ 58.

66 *Id.* ¶ 103.

follow-up appointment, which delayed the diagnosis and treatment of the infection from which he was suffering.[67] He further alleges that Harris delayed scheduling an unspecified four-week follow up appointment, which instead took four months to complete.[68] Finally, he asserts that Harris delayed scheduling his fistulotomy for five months, causing unnecessary, prolonged pain and suffering and a more severe fistula.[69]

These allegations, while leaving much to be desired, plausibly state a claim of deliberate indifference to serious medical needs. Donahue appears to allege that he had follow-up treatment prescribed by outside physicians for serious medical issues (*e.g.*, post-surgery care), and Harris knowingly failed to schedule those visits in a timely manner, resulting in further pain and injury. The Eighth Amendment claim against Harris, therefore, survives Rule 12(b)(6) scrutiny.

### E. Beth Herb

Donahue's allegations against C.H.C.A. Beth Herb fail to state a medical indifference claim. Donahue first alleges that Herb wrongfully denied several grievances.[70] However, as explained above, a prison official's involvement in the grievance process generally does not state personal involvement for Section 1983 liability.

---

[67] *Id.* ¶ 104.
[68] *Id.* ¶ 105.
[69] *Id.* ¶ 106.
[70] *See id.* ¶¶ 199, 202-04, 224-26.

Donahue also alleges that Herb was present for some of his medical appointments and seems to imply that she should have attempted to provide additional or different treatment for him.[71] But Donahue's pleading clearly notes that, during those visits, he was primarily (and competently) treated by Dr. Baddick, whom Donahue does not allege mistreated him. As such, Herb—who is an administrator, not a medical provider—had no reason to believe that Donahue was not receiving adequate medical attention from a qualified medical expert.[72]

Finally, Donahue proffers conclusory, speculative allegations that Herb "conspired" with Wellpath to delay his surgery and alter his medical records to cover up the inadequate care.[73] These undeveloped, conclusory allegations do not suffice to plausibly allege a Section 1983 conspiracy, as a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[74] Donahue does not plausibly allege facts showing a conspiracy to violate his civil rights.

---

71 *Id.* ¶¶ 198-201, 218-20.

72 *See Montanez*, 154 F.4th at 143 (noting that when a "prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *Spruill*, 372 F.3d at 236 (explaining that nonmedical prison officials are not "chargeable with the Eighth Amendment scienter requirement of deliberate indifference" unless they have a reason to believe (or actual knowledge) that prison doctors or other medical staff are mistreating or not treating a prisoner).

73 Doc. 36 ¶¶ 210, 222, 232.

74 *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of

Donahue also includes other unrelated allegations involving Herb,[75] but those allegations actually demonstrate that Herb responded to Donahue's requests by providing competent answers to his questions or informing him that she would investigate his concerns. They do not reflect deliberate indifference to medical needs.

In sum, Donahue fails to state an Eighth Amendment claim against Herb. That claim will therefore be dismissed pursuant to Section 1915A(b)(1).

### F. Crystal Ewaskiwicz

Donahue's allegations against Nurse Crystal Ewaskiwicz involve treatment during a single appointment. They plainly fail to state a constitutional violation.

Donahue asserts that one day after his September 12 hemorrhoidectomy, he was returned to SCI Frackville.[76] He recounts that he was sent to the medical department on September 17, 2022, for a dressing change.[77] Ewaskiwicz (along with another nurse) examined Donahue and noted that two of the outer sutures had

---

law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

75 *See* Doc. 36 ¶¶ 205, 219, 223.

76 *Id.* ¶¶ 238-39.

77 *Id.* ¶ 240.

broken open but the three inner sutures were still intact.[78] Ewaskiwicz informed Donahue that she believed the wound would heal on its own without further surgical intervention, and also reassured him that he would be seen later by a physician assistant who could address his concerns about the stitches.[79]

Donahue alleges that Ewaskiwicz failed to change his dressing or give him a "Sitz bath," and failed to report to Dr. Baddick that two sutures had broken.[80] He also appears to disagree with Ewaskiwicz's professional judgment about his wound care. These allegations fall far short of establishing the high threshold for deliberate indifference. Rather, they show either mere disagreement as to medical judgment or medical negligence, as reflected by Donahue claiming that Ewaskiwicz breached a duty of care.[81] Neither "is cognizable under the Eighth Amendment."[82] The medical indifference claim against Ewaskiwicz will likewise be dismissed for failure to state a claim under Section 1915A(b)(1).

### G. Donald O'Brien

Donahue lodges many complaints about Physician Assistant Donald O'Brien's care. Most of his allegations do not plausibly state a constitutional violation.

---

78 *Id.* ¶ 241.
79 *Id.* ¶ 243.
80 *Id.* ¶¶ 244, 246.
81 *Id.* ¶ 248.
82 *Montanez*, 154 F.4th at 142 (citing *Estelle*, 429 U.S. at 106).

First, many of Donahue's allegations merely reflect frustration with O'Brien's bedside manner. Donahue alleges that O'Brien was "rude and acted as if [his] presence was offensive,"[83] became "irate" with Donahue during an appointment to the point of his "face turn[ing] deep red as spittle foamed up in the corner of his mouth,"[84] acted "hostile" toward Donahue and treated him "as a nuisance,"[85] answered Donahue's questions "in a condescending tone with venom dripping from every word,"[86] and seemed "miffed or annoyed" about having to treat Donahue.[87] While such conduct certainly could be viewed as unprofessional, none of these allegations rises to the level of constitutional infringement.

Second, most of Donahue's allegations against O'Brien once more implicate only medical negligence. For example, Donahue alleges that O'Brien examined his post-surgical wound and told him it was "healing up nicely," when in fact the wound was infected.[88] Additionally, Donahue claims that on November 7, 2022, O'Brien misdiagnosed him with a "fissure" rather than a fistula.[89] However, misdiagnosis is malpractice, not deliberate indifference.[90] Moreover, Donahue admits that on November 7, 2022, O'Brien expressed urgency that Donahue be

---

83 *See* Doc. 36 ¶¶ 75.
84 *Id.* ¶ 76.
85 *Id.* ¶ 86.
86 *Id.*
87 *Id.* ¶ 90.
88 *Id.* ¶ 67.
89 *Id.* ¶¶ 70-71.
90 *See Pearson*, 850 F.3d at 538 (quoting *Estelle*, 429 U.S. at 106).

seen by the outside surgeon, and Donahue was in fact taken to Geisinger Hospital for follow-up care two days later.[91] Donahue also claims that O'Brien attempted to prescribe medication for him to treat high triglycerides, but Donahue refused to take this advice "due to the fact that [O'Brien]'s a moron."[92] None of these allegations reflects deliberate indifference to serious medical needs.

Next, Donahue proffers several allegations that are purely conclusory and speculative. He claims, without any supporting facts, that O'Brien "intentionally delayed scheduling" him for the fistulotomy "under the guise of" having high triglycerides because O'Brien purportedly wanted Donahue to suffer as he is "an inmate in prison who needs to be punished for the crimes [he's] committed."[93] Donahue likewise speculates that O'Brien accused him of noncompliance with his medications to cover up the delay in scheduling his follow-up treatment.[94] These conclusory, unsupported allegations may be disregarded at the Rule 12(b)(6) stage.[95]

One portion of Donahue's third amended complaint is different. He alleges that, on several occasions, O'Brien specifically refused to have him brought to the medical department for sick call despite knowing that Donahue had submitted sick-

---

91 *Id.* ¶¶ 72-73.

92 *Id.* ¶ 76.

93 *Id.* ¶ 78. This claim also contradicts Donahue's assertion that Kacie Harris was solely responsible for scheduling outside medical appointments. *See* Doc. 78 at 4.

94 Doc. 36 ¶¶ 81, 83.

95 *See Connelly*, 809 F.3d at 787.

call slips seeking treatment for legitimate pre- and post-surgical care.[96] According to Donahue, several corrections officers informed him that O'Brien would screen the list of sick-call inmates for those he deemed "problematic" and would direct the officers not to call those inmates for sick-call appointments regardless of their medical issues.[97] Such allegations imply delayed or denied treatment for non-medical reasons, as well as intentional refusal to provide care known to be medically necessary.

At bottom, most of Donahue's allegations against O'Brien do not reflect deliberate indifference to serious medical needs. Rather, they show that O'Brien treated Donahue on numerous occasions but that this treatment allegedly fell short of the standard of care, which implicates only medical malpractice. Nevertheless, Donahue also plausibly alleges that O'Brien intentionally screened the sick-call patients and told corrections officers not to call those inmates, like Donahue, whom he deemed "problematic." That allegation rises beyond malpractice to the level of a potential Eighth Amendment violation. O'Brien's motion to dismiss pursuant to Rule 12(b)(6) will therefore be denied.

### H. Nicole Boguslaw

Donahue also plausibly alleges an Eighth Amendment claim against Nicole Boguslaw. The gravamen of Donahue's claim is that Boguslaw allegedly refused

---

[96] Doc. 36 ¶¶ 65, 80.
[97] *Id.* ¶ 80.

to schedule or provide necessary medical treatment for Donahue because he failed to sign a section of the sick-call slip related to payment.[98] Donahue alleges that his sick calls explained that he was suffering from explosive diarrhea, bleeding, clear discharge, extreme pain, and "possible hemorrhoids," but Boguslaw rejected his sick-call slips on multiple occasions for failing to sign the "DC-138A (a cash slip)" form.[99] At the pleading stage, these allegations suffice to state a claim of delaying or denying necessary medical treatment for non-medical reasons. Boguslaw's Rule 12(b)(6) motion, therefore, will be denied.

**I. Kathy Brittain**

Donahue's allegations against Superintendent Kathy Brittain fail for multiple reasons. His initial claim that Brittain should be held liable under the doctrine of *respondeat superior*[100] is a nonstarter, as there is no vicarious liability in Section 1983 litigation. His averments regarding Brittain's handling of his grievance appeals[101] do not plead personal involvement in the purported constitutional violations, as Donahue explicitly alleges that those violations were committed by other officials or medical providers at SCI Frackville. Donahue additionally claims that he sent written requests to Brittain about his medical care,

---

98 *See id.* ¶¶ 12-16, 23, 25, 28, 30, 112, 118.
99 *Id.* ¶¶ 12-14, 23, 25, 28, 30, 112, 118.
100 *Id.* ¶ 109.
101 *Id.* ¶¶ 115-16, 121-23, 131, 133, 167, 170-71, 186.

but he also admits that Brittain responded to those requests,[102] thus failing to implicate deliberate indifference. Finally, Donahue cursorily alleges that Brittain failed to train staff,[103] but that mere legal conclusion does not plausibly state a Section 1983 failure-to-train claim.

None of these allegations plausibly states that Brittain—a non-medical official with knowledge that Donahue was under the care of multiple medical providers—was deliberately indifferent to Donahue's serious medical needs. The Eighth Amendment claim against Brittain, therefore, will be dismissed pursuant to Section 1915A(b)(1).

### J. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[104] Further leave to amend will be denied because Donahue has failed to cure substantive deficiencies with his pleadings even after numerous "amendments previously allowed."[105] Donahue, in fact, has had four opportunities to attempt to state a claim for relief. This case, therefore, will continue only as to Donahue's individual capacity Eighth Amendment medical

[102] *Id.* ¶¶ 134, 135(2nd), 137-39, 175-76, 178-80, 192-93.
[103] *Id.* ¶ 194.
[104] *Grayson*, 293 F.3d at 114.
[105] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

indifference claims against defendants Boguslaw, Harris, and O'Brien. The other Section 1983 claims will be dismissed with prejudice.

## IV. CONCLUSION

It is obvious that Donahue believes he received inadequate medical care while incarcerated at SCI Frackville. His lengthy third amended complaint, however, frequently (and improperly) attempts to "constitutionalize" state-law tort claims sounding in medical negligence.[106] Thus, the Court will dismiss in large part Donahue's third amended complaint for failure to state a claim upon which relief may be granted. This case will proceed only on the Section 1983 claims where Donahue has plausibly alleged a violation of the Eighth Amendment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

[106] *See Pearson*, 850 F.3d at 539 (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).